IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC MOUTAL and ANDREA
NEWMAN,

                Plaintiffs,

     v.

EXEL, INC., a foreign corporation,

                Defendant.

No. 3:17-cv-01444-HZ

OPINION & ORDER

HERNÁNDEZ, District Judge:

      Plaintiffs Eric Moutal and Andrea Newman brought this negligence action against Defendant Exel, Inc. Currently pending before the Court is Defendant's Motion to Reduce Plaintiff's Damages Award [138]. For the reasons discussed, Defendant's motion is DENIED.

///

///

///

1 – OPINION & ORDER

## BACKGROUND

Plaintiffs are Canadian citizens who were vacationing in the Columbia River Gorge near Hood River, Oregon in the summer of 2016. Defendant provides trucking services throughout the United States, including Oregon. On August 3, 2016, Plaintiffs were bicycling along Interstate 84 when Defendant's employee struck Plaintiffs with a semitruck.

The case proceeded to a five-day jury trial beginning on December 9, 2019. The jury returned a verdict for Plaintiffs, awarding Newman $400,000 in noneconomic damages, and Moutal $1,258,893.75 in economic damages, $4 million in noneconomic damages, and $4 million in punitive damages. Defendant now moves for an order reducing the noneconomic damages awarded to Moutal ("Plaintiff").

## DISCUSSION

Defendant contends that, pursuant to Oregon Revised Statute § ("O.R.S.") 31.710(1), the noneconomic damages awarded to Plaintiff must be reduced to $500,000. O.R.S. 31.710(1) provides that, with exceptions not relevant here, the amount awarded for noneconomic damages "shall not exceed $500,000" in "any civil action seeking damages arising out of bodily injury, including emotional injury or distress, death or property damage of any one person including claims for loss of care, comfort, companionship and society and loss of consortium." Plaintiff does not dispute the applicability of O.R.S. 31.710(1); rather, he argues that, as applied to him, the statutory cap violates the remedy clause of the Oregon Constitution.[1]

The Court's analysis begins with *Horton v. Oregon Health & Sci. Univ.*, 359 Or. 168 (2016), in which the Oregon Supreme Court "re-examined at length" the Oregon Constitution's

---

[1] Article I, section 10, provides that "[n]o court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

2 – OPINION & ORDER

remedy clause. *Vasquez v. Double Press Mfg., Inc.*, 288 Or. App. 503, 515 (2017), *aff'd on other grounds*, 364 Or. 609 (2019). In *Horton*, the plaintiff brought a medical malpractice action against the Oregon Health and Science University ("OHSU") and an OHSU surgeon for permanent injuries the plaintiff's son suffered due the surgeon's negligence. *Horton*, 359 Or. at 171. The jury awarded the plaintiff approximately $12 million in compensatory damages—$6,071,190.38 in economic damages and $6 million in noneconomic damages. *Id.* The court was faced with the issue of whether applying a $3 million damages cap under the Oregon Tort Claims Act ("OTCA") violated the remedy clause. *Id.* at 171-72 (citing O.R.S. 30.271(3)(a)).[2]

Before addressing the constitutionality of the damages cap, the Oregon Supreme Court identified three general categories of legislation that it had previously considered in analyzing what the remedy clause circumscribes:

> (1) legislation that did not alter the common-law duty but denies or limits the remedy a person injured as a result of that breach of duty may recover; (2) legislation that sought to adjust a person's rights and remedies as part of a larger statutory scheme that extends benefits to some while limiting benefits to others (a *quid pro quo*); [and] (3) legislation that modified common-law duties or eliminated a common-law cause of action when the premises underlying those duties and causes of action have changed.

*Schutz v. La Costita III, Inc.*, 288 Or. App. 476, 486 (2017) (citing *Horton*, 359 Or. at 219). Relevant here, the court held that a statutory damages cap falling into either the first or second category that leaves a plaintiff with an "insubstantial remedy . . . violates the remedy clause." *Horton*, 359 Or. at 219.

Under this framework, the court determined that the OTCA damages cap fell into the second, *i.e.*, *quid pro quo*, category because the OTCA "limits a plaintiff's remedy for a breach of [a state employee's] duty as part of a comprehensive statutory scheme intended to extend

---

[2] Unlike O.R.S. 31.710(1), which limits only noneconomic damages, the OTCA provision limits both noneconomic and economic damages.

3 – OPINION & ORDER

benefits to some persons while adjusting the benefits to others." *Id.* at 221.  In evaluating the "substantiality of the remedy" provided by the OTCA, the court first noted that OHSU, as an arm of the state, is shielded from liability by the doctrine of sovereign immunity.  *Id.*  Sovereign immunity, however, does not prevent state employees from being sued for their tortious conduct, "even though they are acting on the state's behalf."  *Id.* at 222 (citing *Gearin v. Marion Cty.*, 110 Or. 390, 396-97 (1924)).  This legal distinction presents the state, its employees, and plaintiffs with a "dilemma" that the OTCA aims to address.  *Id.*

Oregon has a "constitutionally recognized interest in asserting its sovereign immunity." *Id.*  The state, however, largely "acts through its employees," who carry out government functions that entail increased exposure to liability, such as policing, guarding prisons, and intervening in family matters to protect children from abuse.  *Id.*  If Oregon "indemnified its employees for all the liability that they incurred while acting on the state's behalf, the state's sovereign immunity effectively would be eviscerated."  *Id.*  If, however, the state did not indemnify its employees at all, "few qualified persons would choose to work for the state" and many plaintiffs would be left without a remedy against an "uninsured, judgment-proof state employee."  *Id.* (citations omitted).  By waiving the state's immunity from liability up to the statutory limit, the OTCA "accommodates the state's constitutionally recognized interest in asserting its sovereign immunity with the need to indemnify its employees."  *Id.*  Further, the OTCA guarantees plaintiffs "a solvent defendant will be available to pay any damages up to" the statutory cap, which is "something that they would not have had if the state had not partially waived its immunity."  *Id.*[3]

---

[3] The OTCA adjusts the damages cap upward depending on when the cause of action arose. O.R.S. 30.271(3)-(4).  The $3 million cap discussed in *Horton* applied to causes of action arising on or after December 28, 2007, and before July 1, 2010.  O.R.S. 30.271(3)(a).

4 – OPINION & ORDER

The court further resolved that although the OTCA "would not provide a complete recovery to everyone injured as a result of the state's tortious acts," including the plaintiff there, the statute's "increased limits provide a complete recovery in many cases, greatly expand the state's liability in the most egregious cases, and advance the purposes underlying the doctrine of sovereign immunity while ensuring that a solvent defendant is available to pay[.]" *Id.* at 223-24. Ultimately, the Oregon Supreme Court held that the OTCA damages cap did not violate the remedy clause because it was not "insubstantial in light of the overall statutory scheme, which extends an assurance of benefits to some while limiting benefits to others," and represented "a far more substantial remedy than the paltry fraction [1.2 percent] that remained" after an earlier OTCA provision capping damages at $200,000 was applied in a previous case. *Id.* at 224 (quoting *Howell v. Boyle*, 353 Or. 359, 376 (2013)); *see also Clarke v. Oregon Health Scis. Univ.*, 343 Or. 581, 586 (2007) (finding lower court's reduction of the plaintiff's $17 million prayer for damages to $200,000 as to claims brought against individual state employees violated the remedy clause).

Defendant contends that this Court need look no further than *Horton* to conclude that Plaintiff's award of $4 million in noneconomic damages must be reduced to $500,000 under O.R.S. 31.710(1). Defendant notes that in *Horton*, the court found that reducing the plaintiff's damages to 25-percent of the jury's damages award passed constitutional muster. Defendant asserts that if the noneconomic damages cap is applied here, Plaintiff "will retain more than twenty-eight percent of the compensatory damages awarded by the jury." Def. Mot. 3, ECF 138. Defendant's arguments are unavailing.

*Horton*'s holding is expressly limited to the facts of that case. *Horton*, 359 Or. at 225. The court determined that the constitutionality of the OTCA's damages cap turned "on the

5 – OPINION & ORDER

presence of the state's constitutionally recognized interest in sovereign immunity, the *quid pro quo* that the [OTCA] provides, and the tort claims limits in th[at] case." *Id.* Contrary to Defendant's assertion that the Oregon Supreme Court "addressed" O.R.S. 31.710(1) and "held the noneconomic damages cap does not violate Oregon's remedy clause," *Horton* "express[ed] no opinion on whether other types of damages caps" comply with the remedy clause. Def. Reply 3, ECF 140; *Horton*, 359 Or. at 225. Instead, the court left the resolution of other statutory damages caps, such as O.R.S. 31.710(1), "to the customary process of case-by-case adjudication." *Horton*, 359 Or. at 225.

Since *Horton*, the Oregon Court of Appeals has analyzed O.R.S. 31.710(1) in three successive cases: *Vasquez*, 288 Or. App. 503; *Rains v. Stayton Builders Mart, Inc.*, 289 Or. App. 672 (2018); and *Busch v. McInnis Waste Systems, Inc.*, 292 Or. App. 820 (2018), *rev. allowed*, 365 Or. 556 (2019). In each case, the court distinguished O.R.S. 31.710(1) from the OTCA damages cap and held it violated the remedy clause as applied. Specifically, the Oregon Court of Appeals determined that "ORS 31.710(1) f[alls] within the first category of legislation identified in *Horton*—*i.e.*, the statute limits a remedy for a recognized duty, and does not deny a remedy completely." *Busch*, 292 Or. App. at 822 (citing *Vasquez*, 288 Or. App. at 521).

The court further noted that "cases involving the OTCA damages cap d[o] not control whether ORS 31.710(1) provides a substantial remedy," because "those cases involved different statutory schemes and different considerations than those present in ORS 31.710(1)." *Id.* at 823 (citing *Vasquez*, 288 Or. App. at 524). Unlike the OTCA damages cap, O.R.S. 31.710(1) does "not provide a quid pro quo" to plaintiffs, because "the legislative purpose for the dramatic departure from the common-law model was to put a lid on litigation costs, which in turn would control rising insurance premium costs for Oregonians." *Id.* (citations and internal quotation

marks omitted). The court "concluded that 'the legislature's reason for enacting the noneconomic damages cap—which was not concerned with injured claimants—cannot bear the weight of the dramatic reduction in noneconomic damages that the statute requires for the most grievously injured plaintiffs.'" *Id.* (quoting *Vasquez*, 288 Or. App. at 525).

In analyzing whether O.R.S. 31.710(1) left the plaintiffs in *Vasquez*, *Rains*, and *Busch* with a substantial remedy, the Oregon Court of Appeals considered the severity of the plaintiffs' injuries. The plaintiff in *Vasquez* was nearly cut in half at the base of his spine by a bale-cutting machine and was rendered permanently paraplegic by his injuries. *Vasquez*, 288 Or. App. at 525. The jury awarded him $4,860,000 in noneconomic damages. *Id.* In *Rains*, the plaintiff also became paraplegic after he "fell almost 16 feet to the ground when a defective wood board broke at his job site." *Rains*, 289 Or. App. at 675. The jury awarded him $2,343,750 in noneconomic damages, and his wife $759,375 in noneconomic damages for loss of consortium. *Id.* at 691. The plaintiff in *Busch* was struck by the defendant's garbage truck as he was crossing a street. *Busch*, 292 Or. App. at 821. He "suffered severe injuries, including the traumatic amputation of his leg above the knee." *Id.* The jury awarded him $10,500,000 in noneconomic damages. *Id.* In all three cases, the Oregon Court of Appeals found that application of O.R.S. 31.710(1) would result in "a bare reduction in [the plaintiffs'] noneconomic damages without any identifiable statutory *quid pro quo* or constitutional principle that the cap takes into consideration." *Vasquez*, 288 Or. App. at 526; *Rains*, 289 Or. App. at 691; *Busch*, 292 Or. App. at 824. Accordingly, the court held that reducing the plaintiffs' "noneconomic damages awards to $500,000 would leave them without a 'substantial' remedy as required by Article I, section 10." *Rains*, 289 Or. App. at 691; *see also Vasquez*, 288 Or. App. at 526; *Busch*, 292 Or. App. at 824.

7 – OPINION & ORDER

Defendant argues that Plaintiff's reliance on *Vasquez* and its progeny is misplaced. However, a federal court applying state law "must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) (quotation omitted). As discussed, *Horton*'s narrow holding is silent on whether O.R.S. 31.710(1) complies with the remedy clause, whereas *Vasquez*, *Rains*, and *Busch* addressed that question head on. Notably, those cases analyzed the constitutionality of the noneconomic damages cap pursuant to the framework provided in *Horton*. Thus, while *Horton* certainly informs the Court's analysis, the *Vasquez* line of cases are more directly on point.[4]

Further, the Court is not persuaded by Defendant's argument that the Oregon Supreme Court granting review in *Busch* "indicates the court is not satisfied that *Vasquez* or *Rains* express the controlling law in Oregon." Def. Reply 4. Unlike *Daniel*, in which the Ninth Circuit found that the California Supreme Court's denials of petitions for review and depublication of an opinion indicated that the Supreme Court would not decide the issue differently than the California Court of Appeal, the mere fact that the Oregon Supreme Court granted review of *Busch* is little evidence—much less "convincing evidence"—that the Oregon Supreme Court will decide *Vasquez* and its progeny differently. *Daniel*, 806 F.3d at 1222. Therefore, the Court finds that the "substantiality" analysis put forward in *Vasquez*, and applied in *Rains* and *Busch*, is controlling.

Before turning to that analysis, however, the Court notes that Defendant rehashes several arguments that the Oregon Court of Appeals has already rejected. For example, Defendant

---

[4] Defendant even notes that *Horton* established "an as-applied test to the constitutionality of the noneconomic damages cap." Def. Reply 4. Yet, Defendant maintains that the Oregon Court of Appeals' cases are inapposite even though those cases analyzed the same noneconomic damages cap implicated here, O.R.S. 31.710(1), under *Horton*'s "as-applied test."

argues that O.R.S. 31.710(1) provides a *quid pro quo* similar to the one found in the OTCA; however, "a statute, such as ORS 31.710, that only adjusts benefits in favor of the insurance industry and tortfeasor defendants, while limiting the benefits extended to all plaintiffs, without some commensurate, identifiable benefit to plaintiffs, is not a *quid pro quo*, as that term is understood in the context of the remedy clause." *Vasquez*, 288 Or. App. at 521.  Further, to the extent Defendant argues that under *Greist v. Phillips*, 322 Or. 281 (1995), $500,000 in noneconomic damages is always a substantial remedy, that case "is limited to wrongful-death claims based on the historical limitations placed on those claims, which is a circumstance that is not present in this case." *Vasquez*, 288 Or. App. at 523-24; *Busch*, 292 Or. App. at 822-23 ("[W]e rejected the argument advanced by the defendant [in *Vasquez*] that *Greist*[] held that an award of all of a plaintiff's economic damages plus $500,000 in noneconomic damages is, as a matter of law, 'substantial'").  Finally, the Court "decline[s] to approach this case in the way suggested by [D]efendant, by comparing and contrasting various percentages of recovery from other cases," such as *Horton*, "that the [Oregon] Supreme Court has determined involved a substantial remedy," because "those cases all relied on considerations that are not present here." *Vasquez*, 288 Or. App. at 526.

As to whether applying the noneconomic cap leaves Plaintiff with a substantial remedy, the Court first notes that Plaintiff "would have been entitled to recover his noneconomic damages, not subject to any cap" under the common-law model existing at the time the Oregon legislature enacted O.R.S. 31.710(1). *Id.* at 524-25.  Notably, the cap was put into place "in 1987[,] has not since been revisited," and provides "no mechanism for adjustment for the changing value of money or for adjustment based on the relative severity of the injuries sustained by a plaintiff." *Id.* at 525.  Unlike the OTCA cap, O.R.S. 31.710(1) confers no benefit to

Plaintiff in exchange for this reduced remedy. Absent a *quid pro quo* or countervailing constitutional interest, "the legislature's reason for enacting the noneconomic damages cap . . . cannot bear the weight of the dramatic reduction in noneconomic damages that the statute requires for the most grievously injured plaintiffs." *Id.*

Plaintiff was seriously injured by Defendant's tortious conduct. Defendant argues Plaintiff's injuries are "qualitatively different" because he was not rendered paraplegic like the plaintiffs in *Vasquez* and *Rains*, and did not have his leg amputated like the plaintiff in *Busch*. Def. Reply 5. The Court, nonetheless, finds these differences insignificant considering the extent of Plaintiff's injuries. Indeed, Plaintiff's leg was nearly severed when Defendant's driver ran him over, he had to be life-flighted to the hospital, where physicians were fortunately able to save his leg, he ultimately required five surgeries before becoming medically stationary, and he has long-term functional deficits as a result of Defendant's negligence. Plaintiff is the type of "grievously injured" individual that the Oregon Court of Appeals was concerned could be denied a substantial remedy by operation of the noneconomic damages cap. *Cf. Zweizig v. Nw. Direct Teleservices; Inc.*, 331 F. Supp. 3d 1173, 1186 (D. Or. 2018) (distinguishing the plaintiff's purely emotional distress caused by the defendant's blogging from the "grievous injuries" suffered by the plaintiffs in *Vasquez* and *Rains*).

On balance, decreasing Plaintiff's award from $4 million to $500,000 would result in a "bare reduction in [P]laintiff's noneconomic damages without any identifiable statutory *quid pro quo* or constitutional principle that the cap takes into consideration." *Vasquez*, 288 Or. App. at 526. Because "none of those considerations (or any other applicable considerations) are at play," there is no "principled reason" for reducing Plaintiff's noneconomic damages to only 12.5% of the amount awarded by the jury. *Rains*, 289 Or. App. at 692 (applying $500,000 cap to

noneconomic damages awards of $1,843,750 and $759,375—leaving 27% and 65% of original awards, respectively—violated the remedy clause); *Vasquez*, 288 Or. App. at 525 (reducing $4,860,000 in noneconomic damages to 10% of original amount violated the remedy clause); *Busch*, 292 Or. App. at 824 (reducing $10,500,000 noneconomic damages award to 5% of original amount violated the remedy clause). Such a significant reduction would leave Plaintiff with an insubstantial remedy. Therefore, the Court denies Defendant's motion because applying O.R.S. 31.710(1) in this situation would violate the remedy clause.

## CONCLUSION

For the reasons discussed, Defendant's Motion to Reduce Plaintiff's Damages Award [138] is DENIED.

IT IS SO ORDERED.

DATED:     May 6, 2020     .


MARCO A. HERNÁNDEZ
United States District Judge

11 – OPINION & ORDER