IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ERIC MOUTAL and ANDREA NEWMAN,

           Plaintiffs,

    v.

EXEL, INC., a foreign corporation,

           Defendant.

No. 3:17-cv-01444-HZ

OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiffs Andrea Newman and Eric Moutal brought this negligence claim against Defendant Exel, Inc. Currently before the Court are Defendant's Renewed Motion for Judgment as a Matter of Law [153] and Motion for New Trial or Remittitur [152]. The Court DENIES Defendant's motions.

1 – OPINION & ORDER

## BACKGROUND

Plaintiffs are Canadian citizens who were vacationing in the Columbia River Gorge near Hood River, Oregon in the summer of 2016. Defendant provides trucking services throughout the United States, including Oregon. On August 3, 2016, Plaintiffs were bicycling along Interstate 84 when Defendant's employee, Terry Tisdale, ran into Plaintiffs with his semi-truck.

The case proceeded to a five-day jury trial beginning on December 9, 2019. The jury returned a verdict for Plaintiffs, awarding Newman $400,000 in noneconomic damages, and Moutal $1,258,893.75 in economic damages, $4 million in noneconomic damages, and $4 million in punitive damages. Defendant now moves for judgment as a matter of law or, in the alternative, for a new trial or remittitur on the punitive damages awarded to Moutal.

## STANDARDS

### I.    Renewed Motion for Judgment as a Matter of Law

Pursuant to Federal Rule of Civil Procedure ("Rule") 50(b), a renewed motion for judgment as a matter of law ("RJMOL") should be granted "'if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict.'" *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). The Supreme Court has set forth the following standard for a court to apply when a losing party moves to set aside a jury verdict:

> [I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the

> court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 US 133, 150-51 (2000) (internal citations and quotation marks omitted). Because a RJMOL is a renewed motion, a party cannot "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (quoting *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003)).

Where "a clear and convincing standard applies, the court . . . inquires 'whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant.'" *Pirv v. Glock, Inc.*, No. CV 06-145 PK, 2010 WL 11579455, at *14 (D. Or. July 19, 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Under Oregon law, "[e]vidence is clear and convincing when 'the truth of the facts asserted is highly probable.'" *Simpson v. Burrows*, 90 F. Supp. 2d 1108, 1130 (D. Or. 2000) (quoting *In re Conduct of Blaylock*, 328 Or. 409, 411 (1999)).

**II.     Motion for New Trial or Remittitur**

The court may grant a motion for new trial "on some or all of the issues" after a jury trial, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). A court may grant a new trial only if the verdict is against the clear weight of the evidence and may not grant a new trial simply because the court would have arrived at a

3 – OPINION & ORDER

different verdict. *DSPT Int'l, Inc. v. Nahum,* 624 F.3d 1213, 1218 (9th Cir. 2010); *Silver Sage Partners Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 819 (9th Cir. 2001).

A "motion for remittitur of a jury verdict is subject to the same standard as a motion for new trial under [Rule] 59." *Morris v. Walgreen Oshkosh, Inc.*, Case No. 3:14-cv-01718-ST, 2016 WL 1704320, at *3 (D. Or. Apr. 18, 2016); *see also Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 278-79 (1989) (explaining that Rule 59 applies to motions for a new trial and remittitur). The district court may, in its discretion, "grant the motion and order a new trial on damages[,] deny the motion[,] or grant a remittitur with the alternative of a new trial if the remittitur is not complied with." *Minthorne v. Seeburg Corp.*, 397 F.2d 237, 244-45 (9th Cir. 1968). If the court decides to offer the option of remittitur, the jury's verdict should be reduced to the "maximum amount sustainable by the proof," so as to ensure that the court's judgment is not substituted for that of the jury. *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982). "If the prevailing party does not consent to the reduced amount, a new trial must be granted." *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983). On the other hand, "[i]f the prevailing party accepts the remittitur, judgment must be entered in the lesser amount." *Id.*

## DISCUSSION

**I.      Preliminary Matters**

The Court declines to address Defendant's RJMOL to the extent it challenges the admissibility of the evidence related to Tisdale's post-accident conduct. In its motion, Defendant argued that Tisdale's post-accident conduct "should not have been . . . allowed before the jury" and "[t]he post-accident conduct improperly factored into the jury's decision to award punitive damages." Def. RJMOL 17, ECF 153. Despite challenging the admissibility of the evidence in its

motion, Defendant now claims it "does not dispute whether the post-accident conduct should have been admitted and considered by the jury"; instead, Defendant contends it has "consistently assert[ed] the post-accident evidence simply is insufficient to support punitive damages as a matter of law." Def. Reply RJMOL 23, ECF 160.

Although Defendant concedes that it is not challenging the admissibility of Tisdale's post-accident conduct in its RJMOL, the Court notes that "a party cannot properly raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its preverdict Rule 50(a) motion." *Go Daddy Software*, 581 F.3d at 961. Defendant's Rule 50(a) motion challenged the sufficiency of the evidence, not its admissibility. *See* Def. Mot., ECF 122. Thus, even if Defendant had not conceded the challenge, it waived the argument by not raising it in its preverdict motion.

In addition, the Court rejects Defendant's argument—presented for the first time in its reply briefs—that it cannot be held liable for punitive damages absent evidence of individual fault on its part. To the extent Defendant asserts that it is entitled to a directed verdict on this basis, it waived that argument by not bringing it in its Rule 50(a) motion. *Go Daddy Software*, 581 F.3d at 961. As to Defendant's argument that it is entitled to a new trial for this reason, Defendant has also waived that argument because the Court does not consider new arguments raised for the first time in a reply brief. *In re Rains*, 428 F.3d 893, 902 (9th Cir. 2005). And even assuming the argument was properly before this Court, the Oregon Supreme Court has squarely rejected it: "If the servant has committed a tort within the scope of his employment so as to render the corporation liable for compensatory damages, and if the servant's act is such as to render him liable for punitive damages, then the corporation is likewise liable for punitive damages." *Johannesen v. Salem Hosp.*, 336 Or. 211, 219 (2003) (quoting *Stroud v. Denny's*

5 – OPINION & ORDER

*Rest., Inc.*, 271 Or. 430, 435 (1975)). Because Tisdale was acting within the scope of his employment when he struck Plaintiffs with his semi-truck, it was not clear error for the jury to assess punitive damages against Defendant for the tortious conduct of its employee.

## II.    Renewed Judgment as a Matter of Law

Defendant re-moves for judgment as a matter of law on the jury's award of $4 million in punitive damages to Moutal. The crux of Defendant's argument is that there was insufficient evidence for the jury to find Tisdale acted with the requisite culpability when he struck and severely injured Moutal with his semi-truck. Def. JMOL 2 (arguing "garden variety negligence cannot support a verdict awarding $4 million in punitive damages to Mr. Moutal"). Under Oregon law:

> Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has . . . shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others.

Or. Rev. Stat. § ("O.R.S.") 31.730.

Defendant argues that even accepting the totality of Moutal's evidence as true and construing all inferences in his favor, Moutal failed to prove by clear and convincing evidence that Tisdale showed a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety, and welfare of others. The Court disagrees.

The evidence adduced at trial demonstrated that Tisdale set his cruise control four miles per hour over the speed limit in violation of state law and company policy. Barton Decl., Ex. A ("Tr.") at 180:3–6, 187:4–188:6, 412:9–413:20, 578:9–10, ECF 156-1. Tisdale was weaving in and out of the shoulder for miles, such that the motorist driving in the same lane behind him,

Gilbert Carrillo, believed he was falling asleep at the wheel. Tr. 919:5–7; Barton Decl., Ex. B ("Carrillo Tr.") at 5:1–8, ECF 156-2. He failed to see numerous "Bicycles on Roadway" signs, even though he had driven the route more than a thousand times and the signs had been in place for at least a year before the incident. Tr. 181:11–25, 410:11–412:3, 498:12–500:13, 732:3–24, 737:25–738:22. Tisdale also failed to see the brightly-clothed Plaintiffs as they were riding their bicycles on the shoulder of the highway even though Carrillo was able to see them. Tr. 231:22–25, 403:25–404:25; Carrillo Tr. 7:3–6. As he neared the curve where Plaintiffs were bicycling, Tisdale did not switch over to the fast lane despite having ample room to do so. Tr. 378:10–12; Carrillo Tr. 6:17–23. He failed to follow the curve of the road and drove his semi-truck into the shoulder, striking Plaintiffs and nearly running into the guardrail before "he jerked hard to the left." Tr. 375:17–376:1, 377:7–17, 494:7–496:21; Carrillo Tr. 7:10–14.

    Despite seeing Moutal's body flying through the air in his right-view mirror, the first thing Tisdale did after pulling off the road was to inspect his truck for damage. Tr. 424:10–14; Carrillo Tr. 29:13–20. Carrillo and another witness who was driving behind Tisdale in the left lane, Wally Shelton, quickly made their way back to the crash site to help Plaintiffs; however, Tisdale did not join them. Tr. 379:1–13, 425:15–18. Instead, he felt it was more important to tell Carrillo and Shelton that Plaintiffs were at fault by riding into his lane, that he had no choice but to hit them, and that he was worried about losing his job. Tr. 379:10–13; Carrillo Tr. 8:12–9:20.

    As Carrillo and Shelton hurried back to the crash site, Tisdale stayed near his truck to find cellphone reception so that he could report the incident to his supervisor. Tr. 425:15–24. Tisdale asked his supervisor to call 9-1-1 and "get an ambulance and police department there." Tr. 426:1–3. Tisdale did not personally call 9-1-1 due to his supposedly poor cellphone reception, although Shelton and Liesl Peterson, a nurse who happened by the crash site and

pulled over, did. Tr. 266:4–8, 376:7–10. Carrillo, Shelton, and Peterson helped Moutal in various ways, including by giving him first aid and redirecting oncoming traffic away from the crash site. Tr. 236:2–10; 378:17–379:5. Tisdale, however, did not render any assistance to Moutal; he did not get the first-aid kit from his truck or put out the reflective triangles he had with him to warn other drivers about the crash. Tr. 186:2–13, 425:15–25, 429:2–11.

Tisdale also interfered with Oregon State Trooper Jacob Ferrer's on-scene investigation. While Ferrer was taking Shelton's statement, Tisdale interrupted their conversation, asking Shelton what he had seen. Tr. 169:2–7. Ferrer instructed Shelton to return to his car so that he could speak with him in private later. Tr. 169:11–16. Tisdale followed Shelton, asking him questions and reiterating his view that Plaintiffs rode into his lane in an effort to gain Shelton's confidence so that he would agree with him. Tr. 169:17–19, 380:3–11. Ferrer had to ask Tisdale to leave Shelton alone and speak with him instead to prevent Tisdale from influencing Shelton's recollection of the events. Tr. 169:19–170:7.

Shortly after Ferrer took Carrillo's statement, Tisdale approached Ferrer to ask what Carrillo had said. Tr. 175:7–13. Ferrer ignored Tisdale's question and instructed him to drive his truck to the next exit, where Ferrer would speak with him further. Tr. 175:14–16. Ferrer did this in part to remove Tisdale from the scene so that he could interview the witnesses without being further interrupted by Tisdale. Tr. 176:9–13. Instead of immediately complying with Ferrer's instruction to relocate, Tisdale interrupted Ferrer a couple more times to ask what Shelton and Carrillo had told him. Tr. 175:17–18. Ferrer again told Tisdale to leave and wait for him at the next exit. Tr. 176:3–5. When Ferrer and Tisdale later spoke, Tisdale asked Ferrer several more times what the other witnesses had reported before giving his account of the incident. Tr. 179:20–180:2.

8 – OPINION & ORDER

Based on the foregoing, the Court finds that the jury reasonably concluded by clear and convincing evidence— i.e., it was highly probable—that Tisdale showed a reckless and outrageous indifference to a highly unreasonable risk of harm and acted with a conscious indifference to the health, safety, and welfare of others. Tisdale purposefully setting his cruise-control in excess of the speed limit while also repeatedly weaving in and out of his lane as if falling asleep; failing to see Plaintiffs riding their bicycles, the cars behind him, or the numerous "Bicycles on Roadway" signs that dotted that stretch of the highway for a year before the crash; failing to move into the fast lane despite having plenty of room to do so; failing to render aid to Moutal or otherwise assist in making the scene safe; interfering with Ferrer's investigation to the point that he had to be asked to leave the scene; and attempting to convince Shelton that his version of the events was true, supports the jury's conclusion that Tisdale's conduct was sufficiently "aggravated" to warrant punitive damages. *Jane Doe 130 v. Archdiocese of Portland in Oregon*, 717 F. Supp. 2d 1120, 1140-41 (D. Or. 2010) ("Under Oregon law 'it is well-established that whether a defendant's conduct is aggravated or wanton . . . is for the jury to decide, as long as there is evidence upon which the finding can be based.'" (quoting *Andor by Affatigato v. United Air Lines, Inc.*, 303 Or. 505, 509 (1987)).

While "any single factor alone might not be sufficient, the combination of several factors is sufficient to raise a [jury question] as to whether [the defendant]'s conduct justifies an award of punitive damages." *Ibanez v. Bettazza*, No. 3:11-CV-01518-SI, 2013 WL 1295219, at *4 (D. Or. Mar. 28, 2013). Here, the evidence demonstrates that Tisdale's conduct involved "a degree of culpability greater than inattention or simple negligence." *Badger v. Paulson Inv. Co.*, 311 Or. 14, 28 (1991) (citing *Andor*, 303 Or. at 511-513). Based on the evidence that Tisdale was repeatedly straying into the highway shoulder and had little-to-no awareness of his surroundings,

9 – OPINION & ORDER

the jury could have reasonably found that Tisdale was falling asleep at the wheel, or purposefully ignoring the road, or was otherwise significantly distracted. And considering that he was weaving for miles, a reasonable juror could have concluded that Tisdale's decision to keep driving showed a reckless and outrageous indifference to the highly unreasonable risk of harm occasioned by a fatigued or distracted driver operating a semi-truck on a highway shared with bicyclists, and in doing so he acted with a conscious disregard to the health, safety, and welfare of others. Furthermore, a reasonable juror could have found Tisdale's attempts to influence the other motorists' statements, his failure to assist Moutal in any way, and his singular focus on the impact that the crash would have on his life indicated that Tisdale was indifferent to the health and safety of those he shared the road with. Because the Court does not find that "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict," Defendant's RJMOL is denied. *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) (citing *Pavao*, 307 F.3d at 918).

### III.  Motion for New Trial or Remittitur

Defendant moves for a new trial or remittitur on the jury's award of punitive damages to Moutal. Defendant argues: (1) there is insufficient evidence that Tisdale acted with the requisite culpability to warrant an award of punitive damages; (2) the Court erroneously admitted evidence of Tisdale's post-accident conduct; and (3) the amount of the punitive damages award is grossly excessive as a matter of law.

#### A.  Sufficiency of the Evidence

In considering a Rule 59 motion for a new trial, the district court "is not required to view the trial evidence in the light most favorable to the verdict." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014) (citation omitted). Instead, "a

district court has 'the duty to weigh the evidence as the court saw it, and to set aside the verdict of the jury . . . where, in the court's conscientious opinion, the verdict is contrary to the clear weight of the evidence.'" *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1213 (D. Or. 2015) (quoting *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)); *see also Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987) (noting the district court should grant a new trial if it "is left with the definite and firm conviction that a mistake has been committed").

The Court has independently weighed the evidence and the witnesses' credibility and, for the same reasons provided in denying Defendant's RJMOL, does not find that it is against the clear weight of the evidence to find that Tisdale's conduct was sufficiently culpable to justify the jury's award of punitive damages.

### B.     Admissibility of the Evidence

Unlike a RJMOL, the court can address arguments made for the first time in a motion for a new trial. *Freund*, 347 F.3d at 765. Nonetheless, Defendant's argument that the Court should have excluded evidence of Tisdale's post-accident conduct is unavailing. As Defendant correctly notes, "matters occurring after the tortious act are not material to the issue of punitive damages, *unless they constitute evidence of the manner in which the complained of event occurred*." *Mason v. Householder*, 58 Or. App. 192, 195 (1982) (emphasis added). For example, evidence of post-injury conduct is admissible where, as is the case here, it is relevant to the defendant's culpable state of mind. *See*, *e.g.*, *Byers v. Santiam Ford, Inc.*, 281 Or. 411, 416 (1978) ("Evidence of the parties' conduct subsequent to the event, which produces plaintiff's claim for punitive damages . . . must be probative of the defendant's state of mind at the time of the transaction.") (citation omitted). Because the post-accident evidence was relevant to Tisdale's

state of mind at the time of the incident—i.e., whether he was reckless and consciously indifferent—it was properly admitted.

### C. Excessiveness

Defendant next argues that $4 million in punitive damages is "grossly excessive" in violation of state and federal law. An award of punitive damages is not excessive if it "is within the range that a rational juror would be entitled to award based on the record as a whole." O.R.S. 31.730(2). To make this determination, the court evaluates the punitive damages award in light of the state-specific factors set forth by the Oregon Supreme Court in *Oberg v. Honda Motor Co.*, 320 Or. 544, 550-51 (1995), combined with the three due process "guideposts" announced by the United States Supreme Court in *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574-86 (1996). *Parrott v. Carr Chevrolet, Inc.*, 331 Or. 537, 555 (2001). Under this test, the Court analyzes:

> (1) the statutory and common-law factors that allow an award of punitive damages for the specific kind of claim at issue; (2) the state interests that a punitive damages award is designed to serve; (3) the degree of reprehensibility of the defendant's conduct; (4) the disparity between the punitive damages award and the actual or potential harm inflicted; and (5) the civil and criminal sanctions provided for comparable misconduct.

*Id.* (internal citations omitted).

Because an excessiveness challenge to an award of punitive damages is a question of law, the Court "must view the facts in the light most favorable to the jury's verdict, if there is evidence in the record to support the facts." *Julian-Ocampo v. Air Ambulance Network, Inc.*, No. CIV. 00-1262-KI, 2001 WL 34039480, at *6 (D. Or. Dec. 13, 2001) (citing *Parrott*, 331 Or. at 556).

///

///

12 – OPINION & ORDER

### 1. Statutory and Common Law Factors

Under Oregon law, punitive damages are awarded on the theory that certain intentional conduct should be punished or deterred. *Lane County v. Wood*, 298 Or. 191, 203 (1984). Punishment and deterrence "are not related to actual or compensatory damages" but "concern behavior that society finds undesirable." *Id.* Punitive damages were allowed at common law where the tortfeasor acted "without regard to public rights, and with such carelessness and recklessness as to imply a disregard of social obligations." *Hamerlynck v. Banfield*, 36 Or. 436, 444 (1900); *Day v. Holland*, 15 Or. 464, 469 (1887). Similarly, Oregon statutory law allows punitive damages where "the party against whom punitive damages are sought . . . has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others." O.R.S. 31.730.

In line with the statutory requirement, the Court instructed the jury it could award punitive damages to Moutal only if it found that he had proven by "clear and convincing evidence" that Defendant "has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety, and welfare of others." Jury Instructions 41, ECF 135. The jury was also instructed that the "clear and convincing" standard "is a higher standard of proof than proof by a preponderance of the evidence," and required Moutal to present evidence that left the jurors "with a firm belief or conviction that it is highly probable that the factual contentions of the claim . . . are true." *Id*. With these instructions in mind, the jury deliberated, found Moutal met his burden of proof, and awarded him $4 million in punitive damages.

For the reasons already stated, the Court concludes there was sufficient evidence presented by Moutal at trial on which a rational juror could have determined under a clear and

13 – OPINION & ORDER

convincing evidence standard of proof that Tisdale's conduct was reckless and indifferent. Therefore, statutory and common-law factors that allow for awards of punitive damages under Oregon law support the propriety of the jury's award of punitive damages to Moutal.

### 2. State's Interests

The United States Supreme Court has recognized that a state like Oregon has "a particular interest in deterring and punishing conduct that causes its citizens physical harm, evidences a disregard of their health or safety, or takes advantage of their vulnerability." *Hamlin v. Hampton Lumber Mills, Inc.*, 349 Or. 526, 540 (2011) (citations omitted). Defendant asserts that these interests are not implicated here because Moutal is a Canadian citizen who was only visiting Oregon on vacation. Therefore, argues Defendant, the punitive damages award does not serve Oregon citizens' interests.

Defendant reads the pertinent interests too narrowly. The relevant inquiry focuses on "the *state interests* that a punitive damages award is designed to serve[.]" *Parrott*, 331 Or. at 555 (emphasis added). Oregon not only has a general interest in deterring and punishing conduct that recklessly injures and evinces a conscious disregard for the health and safety of those travelling its highways, but also an economic interest in protecting its own economy and the wellbeing of tourists who contribute to that economy. *See Gore*, 517 U.S. at 572 (recognizing state interest in protecting "its own economy"); *Nelson v. Lane Cty.*, 304 Or. 97, 110-11 (1987) (noting the United States Supreme Court considers "the states' interest in highway safety 'vital'") (quoting *Delaware v. Prouse*, 440 U.S. 648, 658 (1979)); *State v. Day*, 84 Or. App. 291, 295 (1987) (noting Oregon's interest in "promoting highway safety"). Accordingly, the jury's award of punitive damages in this action advances Oregon's interests.

///

### 3.    Reprehensibility

"[T]he degree of reprehensibility of [the] defendant's conduct is 'perhaps the most important indicium of the reasonableness of a punitive damages award.'" *Parrott*, 331 Or. at 561 (quoting *Gore*, 517 U.S. at 575). In analyzing the reprehensibility of the defendant's conduct, the Court should consider whether: (1) the harm caused was physical as opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the victim of the conduct was vulnerable, (4) the conduct involved repeated actions or was an isolated incident, and (5) the harm was the result of intentional malice, trickery, or deceit, or mere accident. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

First, Moutal's harm was physical, not economic. His leg was almost completely severed in the crash. Fortunately, his physicians were able to save his leg from amputation, but his injuries were still devastating, requiring numerous surgeries and causing him long-term functional deficits. Second, as discussed, Tisdale's conduct evinced a reckless disregard for the health and safety of others. Third, Moutal was physically vulnerable.[1] He was legally riding his bicycle in the shoulder of an interstate highway alongside vehicles that greatly outweighed him and were traveling at speeds much greater than his own. As Newman testified, "if there is a vehicle that's going to come into contact with [a bicyclist], the vehicle is going to win." Tr. 231:13-14.

---

[1] Although *Campbell* mentions "financial vulnerability," 538 U.S. at 419, that is because "[i]n each of the Supreme Court cases in which the vulnerability of the plaintiff is discussed, the type of harm claimed by the plaintiff in those cases [wa]s *economic* harm." *In re Actos (Pioglitazone) Prod. Liab. Litig.*, No. 6:11-MD-2299, 2014 WL 5461859, at *25 n.164 (W.D. La. Oct. 27, 2014) (emphasis in original). Where physical harm is present, the relevant vulnerability is physical. *Id.*; *see also Williams v. Philip Morris Inc.*, 340 Or. 35, 56 n.4 (2006), *vacated on other grounds sub nom. Philip Morris USA v. Williams*, 549 U.S. 346 (2007) ("*Gore* indirectly suggests that reprehensibility may include other sorts of vulnerability than financial.").

Fourth, although there is no evidence that Tisdale previously had been involved in an accident or received citations for unsafe driving, his failure to see the "Bicycles on Roadway" signs that he regularly drove by for a year before the incident indicates that his reckless and conscious indifference for the safety of others on the highway was not an isolated incident. *See also* Tr. 412:6–8 (Tisdale also testifying that he did not even know the posted speed limit despite repeatedly driving that stretch of highway). Finally, Moutal's harm was not the result of "intentional malice, trickery, or deceit," but it also was not a "mere accident" given Tisdale's recklessness. However, given that the issue of recklessness is already contemplated by the second reprehensibility subfactor, the Court finds the fifth subfactor weighs in favor of Defendant.

In sum, only one of the reprehensibility subfactors weighs in favor of Defendant, i.e., the lack of intentional malice, trickery, or deceit, and all the other subfactors weigh in Moutal's favor. Accordingly, the Court concludes that a rational juror could find Tisdale's conduct was sufficiently reprehensible to merit a substantial award of punitive damages.

  **4.  Disparity Between Punitive Damages and Harm**

The Court must determine whether there is a reasonable relationship between the punitive damages awarded and the actual and potential harm. *Parrott*, 331 Or. at 562 (citing *Gore*, 517 U.S. at 581). No simple mathematical formula controls a court's review of the ratio of punitive damages to harm; however, the United States Supreme Court has previously characterized a 4:1 ratio between punitive damages and compensatory damages as "close to the line." *Id.* at 563 (quoting *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23 (1991)); *see also Campbell*, 538 U.S. at 425 ("Single-digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution[.]"). Where "compensatory damages are

substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Campbell*, 538 U.S. at 425.

Here, the ratio of the $4 million punitive damages award and the approximately $5.2 million compensatory damages award is roughly .75:1. *See* Verdict for Moutal, ECF 127 (awarding $5,258,893.75 in compensatory damages and $4 million in punitive damages).[2] This ratio is well within the range that the Supreme Court has indicated is presumptively constitutional. *See, e.g., Gore*, 517 U.S. at 581; *Haslip*, 499 U.S. at 23. The Court therefore finds the punitive damages award is "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." *Campbell*, 538 U.S. at 426.

### 5. Civil and Criminal Sanctions Provided for Comparable Misconduct

Finally, the court is required "to identify comparable civil or criminal sanctions applicable to the complained-of conduct, to consider the severity of the available comparable sanctions, and to evaluate the punitive damage award in light of the severity of the comparable sanctions." *Bixby v. KBR, Inc.*, No. 3:09-CV-632-PK, 2013 WL 1789792, at *33 (D. Or. Apr. 26, 2013), *rev'd on other grounds*, 603 F. App'x 605 (9th Cir. 2015). "[P]enalties for comparable misconduct are relevant to whether defendant was on notice of 'the severity of the penalty' that might be imposed." *Parrott*, 331 Or. at 564 (quoting *Gore*, 517 U.S. at 574).

Under Oregon law, Tisdale's conduct constitutes either assault in the second degree, a Class B felony, or assault in the third degree, a Class C felony. *See* O.R.S. 163.175(1)(c) ("A person commits the crime of assault in the second degree if the person . . . . [r]ecklessly causes

---

[2] Defendant initially argued that the punitive damages to compensatory damages ratio becomes approximately 3:1 after applying Oregon's $500,000 cap on noneconomic damages. *See* O.R.S. 31.710(1). Defendant, however, withdrew its request for this Court to apply the noneconomic damages cap after the Oregon Supreme Court determined the cap was unconstitutional. *Busch v. McInnis Waste Sys., Inc.*, 366 Or. 628, 652 (2020) (holding O.R.S. 31.710(1) violates the Oregon Constitution's remedy clause).

17 – OPINION & ORDER

serious physical injury to another by means of a . . . dangerous weapon under circumstances manifesting extreme indifference to the value of human life."); O.R.S. 163.165(1)(a) ("A person commits the crime of assault in the third degree if the person . . . [r]ecklessly causes serious physical injury to another by means of a . . . dangerous weapon."); *State v. Blan*, 272 Or. App. 721, 723 (2015) ("[A] recklessly driven car can be a 'dangerous weapon' when it is used in a manner capable of causing death or serious physical injury.") (citation omitted). A Class B felony is punishable by a term of imprisonment of up to ten years and a fine of up to $250,000, whereas a Class C felony is punishable by a term of imprisonment of up to five years and a fine of up to $125,000. *See* O.R.S. 161.605(2)-(3); O.R.S. 161.625(1)(c)-(d).

Defendant argues that Tisdale's conduct did not constitute felony assault because he was driving only four miles per hour over the speed limit. Defendant cites cases that stand for the proposition that speeding, in and of itself, amounts to nothing more than ordinary negligence. *See Burghardt v. Olson*, 223 Or. 155, 169, 349 P.2d 792, 798, *adhered to on reh'g*, 223 Or. 155, 354 P.2d 871 (1960); *State v. Wilcox*, 216 Or. 110, 122 (1959). Defendant's argument would have some force if the evidence only showed that Tisdale was speeding when he struck Moutal. As discussed, however, there was additional evidence—e.g., Tisdale's weaving into the shoulder for miles, his complete failure to see the road signs that were in place for a year, his failure to see Plaintiffs or change lanes, etc.—that demonstrated Tisdale's recklessness and conscious indifference. Accordingly, the Court finds that the availability of such severe sanctions was sufficient to put Defendant on notice that it could face serious economic consequences for the complained-of conduct and supports the jury's award of punitive damages.

In sum, after considering the "excessiveness" factors summarized in *Parrott*, the Court concludes that the amount of punitive damages awarded against Defendant is within the range a

rational juror could award based on the record as a whole, and the jury's punitive-damages award is supported by the evidence and pertinent law. Accordingly, Defendant's Rule 59 motion is denied.

## CONCLUSION

For the reasons discussed, Defendant's Renewed Motion for Judgment as a Matter of Law [153] and Motion for New Trial or Remittitur [152] are DENIED.

IT IS SO ORDERED.

DATED: ___March 29, 2021___.

*Marco Hernandez*
MARCO A. HERNÁNDEZ
United States District Judge

19 – OPINION & ORDER